BOWLING, Justice,
for the Court:
Appellant Emile McWilliams filed his suit against appellees Wayne Watkins and Rose’s Stores, Inc., in the Circuit Court of Pike County contending that he was entitled to damages for defamation and slander against the defendants. There was a jury verdict for the defendants and appellant files this appeal contending that he was entitled to a new trial because of the following errors:
I. THE COURT ERRED IN FAILING TO GRANT THE APPELLANT A PEREMPTORY INSTRUCTION OR IN THE ALTERNATIVE, THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. THE COURT ERRED IN ALLOWING THE DEFENDANT TO PRESENT TESTIMONY AS TO MATTERS WHICH WERE NOT PERSONALLY KNOWN OR TOLD TO WAYNE WATKINS PRIOR TO THE TIME THAT HE STOPPED THE APPELLANT FOR SHOPLIFTING.
III. THE COURT ERRED IN FAILING TO GRANT PLAINTIFF’S INSTRUCTION P-11.
On April 5, 1980, late in the afternoon, McWilliams went to Rose’s Stores, Inc., with a male friend for the purpose of purchasing what is known as a “cowboy” hat. Appellant made such a purchase and according to him, [later developing to be true], he went through one of the cashier’s stands, paid for the hat, and left the store with the hat on his head. When he arrived at home with his friend, he found another friend, who liked the hat and asked that they go back to the store, so that the friend could purchase a hat similar to that purchased by appellant. This was done. Testimony of plaintiff and his witnesses was that the friend, who also testified, could not find a hat to fit him, so they walked out of the store with appellant wearing the hat he had purchased approximately thirty minutes before. As the two departed the store, the manager and appellee, Wayne Watkins called to appellant and requested that appellant show him the purchase receipt for the hat. Appellant did not find it on his person. He was then requested to go back into the store by the manager. The appellant asked his friend to go to the car and see if the purchase receipt could be found. The friend returned and stated he could not find it in the car. Appellant testified in the meantime Watkins was accusing him of stealing the hat and talking in a loud and rude voice around a large number of people, both customers and employees. After the purchase receipt could not be found, someone suggested that appellant go down the line of several cashier stands and try to identify the cashier who had handled the hat purchase. It is disputed as to whether this was suggested by appellant or Watkins. The proper cashier was found and identified about half-way down the row of cashier stands. She readily stated that she had handled the sale of the hat to McWilliams a short time before and he had worn it out of the store. In looking around, the saleswoman found the sales receipt on the floor of the store. Watkins then readily admitted that appellant did not steal the hat and according to him, he apologized for what happened. As hereinbefore stated, the testimony is in direct conflict as to the manner in which the manager stopped appellant and brought him back into the store. Appellant’s witnesses gave evidence to the fact that Watkins was rude, talked in a loud voice, embarrassed and humiliated appel *856 lant. Watkins stated throughout the controversy he talked in a calm, low voice and was extremely courteous. At the outset, we hold that which set of witnesses were accurate in the personal actions of the store manager was a question for the jury. Incidentally, appellant was an assistant manager of a similar store, which evidently did not handle cowboy hats to suit his taste.
As to the first assignment of error alleging that appellant should have received a peremptory instruction, we hold that the actual occurrences, the language, and the demeanor of all persons involved was conflicting and therefore a question for the jury as stated.
The testimony of appellees’ witnesses was to the effect that appellee Watkins was in his office when he was called by a store division manager and advised that a man was leaving the store with an unpaid hat on his head. Watkins immediately went to the store entrance and exit and according to information he had received, he stopped appellant and brought him back in the store as hereinbefore set out. It developed that the division manager had received her information from a seventeen-year-old part-time clerk, who had been working at the store for two weeks. He had related to the division manager about appellant’s actions in the hat department and leaving the store with a hat on his head. The testimony that is material to the issues in the case is whether or not the seventeen-year-old clerk saw appellant enter the store without a hat on his head, saw him try on hats, and then pick out one and leave the store with the hat. Prior to ap-pellees’ evidence, the attorney for appellant orally moved the court to prohibit any testimony Watkins might give pertaining to facts he did not possess at the time he stopped appellant; that he had none to the effect that appellant had entered the store without a hat on his head. This motion was denied. Watkins then testified on direct examination that when the division manager called him, she told him that the stock clerk had told her that he had seen appellant come into the department without a hat, try on hats and leave with one. Watkins completely changed his testimony on cross examination and admitted the only information he had when he took the action he did was that a man was leaving the hat department with a hat on his head without going by a cashier.
After Watkins’ testimony, appellees were permitted to introduce the young stock clerk who testified that he did not see the hat on appellant’s head when he entered the hat department. Watkins had further admitted on cross examination that the first he knew of the above knowledge of the store clerk was in his investigation after the entire matter was concluded.
We hold that the admission of the evidence by the store clerk was erroneous under the applicable statute as hereinafter pointed out. The question of Watkins’ actions being applied to the statute should be governed by his knowledge at the time those actions were taken.
The affirmative defenses of appellees were based on the provisions of Mississippi Code Annotated, Section 97-23-51 (1972), which statute was a legislative enactment for the protection of retail stores from shoplifting and to give the store personnel an opportunity to make certain actions in investigating alleged shoplifting under certain guidelines. The primary guidelines under this statute are that if the store personnel, acting in good faith and upon probable cause, based upon reasonable grounds therefor, suspect a person of shoplifting, that person may be questioned so long as it is done in a reasonable manner.
There can be no doubt that the provisions of the statute comprise affirmative defenses, particularly in a case with facts as we have here. We have already discussed the knowledge had by appellee Watkins when he took his action. The question was whether or not there was probable cause at the time based on reasonable grounds to stop appellant and whether or not this was done in a reasonable manner, and in good faith. Whatever Watkins learned after the matter was over did not enter into the above criteria. Admittedly Watkins, after *857 changing his testimony on cross examination, had no information that appellant came into the store and hat department without a hat. All he knew was that he was leaving the store with a hat on his head, after he and his friend were trying on hats in the hat department. It was, therefore, error for the lower court to permit the testimony of the young stock clerk as to what he remembered seeing, even though it was not definite that he saw appellant enter the store without a hat. He merely became suspicious because he did not recall a hat being worn by appellant into the hat department. Even this was not conveyed to Watkins before he took his action. This action was taken admittedly on the suspicion of the division manager after being contacted by the stock clerk.
Appellant offered an instruction designated as P-11 purporting to define the elements required in MCA § 97-23-51. Appellees received several instructions based on the affirmative defenses raised by appellees. We have held that the burden of proof under such defenses is on the person raising them; that is, the appellees here. No where in the instructions are the terms “probable cause,” “reasonable grounds,” “reasonable manner,” or “good faith” defined. Such definition was requested by appellant McWilliams and refused. We held in Federal Compress & Warehouse Co. v. Swilley, 252 Miss. 103, 171 So.2d 333 (1965), that terms "dangerous and hazardous” and “good state of repair,” where those terms were advanced as affirmative defenses or affirmative charges, should be defined to the jury, if requested. The same holding was indicated in Southwest Drug Stores of Mississippi, Inc. v. Garner, 195 So.2d 837 (Miss.1967), and J.C. Penney Co., Inc. v. Cox, 246 Miss. 1, 148 So.2d 679 (1963).
In the refused instruction P-11, appellant attempted to instruct the jury that in order to find probable cause existing by appellees, the jury should find that appellees’ representative had sufficient facts which would lead a reasonable man to believe the act of shoplifting had been committed and appellant was the person who committed such act; that probable cause could not be based on mere suspicion. The instruction also went into detail on requiring appellees to prove good faith and reasonable actions. It is noted that the statute requires all of these ingredients to be present. Surely, appellant was entitled to an instruction to offset the bare statements of appellees in their instructions that they should be successful if the jury found “probable cause,” “reasonable manner,” and “good faith.” Appellees contend that the jury was fully instructed when considering all given instructions together. We cannot agree with this for the reason that appellees’ case was based on affirmative defenses as hereinbe-fore set out.
As the case is being reversed and remanded for a new trial, we should state that refused Instruction P-11 is lengthy and could and should be refined by either the attorneys or the court prior to its submission at a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, DAN M. LEE, PRATHER, and ROBERTSON, JJ., concur.